UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICKY SLOTH,

                          Plaintiff,                    **DECISION**
                                                        **and ORDER**
v.
                                                        11-CV-6041T
CONSTELLATION BRANDS, INC., JOHN BOGNASKI,
JOHN ELLIOT, SHELDON RICHARDSON,
BARBARA BAGSHAW, CLAYTON BROWER, individually
and in their Official Capacities[1]

                          Defendants.

_____

## INTRODUCTION

Plaintiff Vicky Sloth ("Sloth"), brings this action pursuant
to Title VII of the Civil Rights Act of 1964 ("Title VII"),
(codified at 42 U.S.C. § 2000(e), et seq.); the Age Discrimination
in Employment Act of 1967, ("ADEA")(codified at 29 U.S.C. § 621 et.
seq.); 42 U.S.C. § 1981, and the New York State Human Rights Law
against her former employer, Constellation Brands, Inc.,
("Constellation") and various employees of Constellation claiming
that she was sexually harassed by the defendants during almost the
entire course of her 28 year employment with Constellation, and has
been discriminated against on the basis of her gender, age, race,

---

[1] While the caption of the Complaint purports to bring causes of action
against individual defendants in their "Official Capacities," "[a]n official
capacity claim against an employee of a private corporation is viewed as a
claim against the corporate entity itself." Galloway v. Swanson, 2012 WL
646074, *8 (N.D. Ohio, 2012, February 28, 2012). As defendants are all
current or former employees of Constellation brands, and Constellation is
named as a defendant, the court need not consider whether defendants were
acting in individual or "official" capacities. See Owens v. Connections
Community Support Programs, Inc., --- F.Supp.2d ----, 2012 WL 37153, *3 (D.
Del., January 06, 2012)(where "employer is named as a defendant, the same
discrimination claim against an employee in his official capacity is
redundant.")

national origin, and disability.[2]   Defendants move to dismiss the
Complaint, or, in the alternative, for summary judgment dismissing
plaintiff's claims on grounds that Sloth's claims are barred by res
judicata and collateral estoppel; the individual defendants named
in the complaint are not subject to liability; the majority of
plaintiff's claims are time barred; those claims that are not time-
barred fail to state a claim upon which relief may be granted; and
plaintiff has failed to exhaust her administrative remedies with
regard to many of her claims, and thus is barred from bringing
those claims before this court.

For the reasons set forth below, defendants' motion is granted
in-part and denied in-part.

<u>BACKGROUND</u>

The following factual allegations are found in the plaintiff's
complaint and Defendants' Statement of Material Facts.   As a
general matter, the defendants deny all of plaintiff's claims of
harassment or discrimination.

Plaintiff Vicky Sloth became employed by Constellation Brands
in December, 1980.   Constellation is a producer and distributer of
wines and spirts, and Sloth worked in the production area of the

---

[2] Although plaintiff alleges that she was discriminated against on the
basis of a disability, she does not allege any cause of action under the
Americans with Disabilities Act ("ADA"). Her only references to the ADA are
found in the unnumbered "Preliminary Statement" portion of her Complaint, and
at ¶ 158 of the Complaint, where she alleges that at the time she was fired
from her employment, she was "disabled within the meaning of the New York
Human Rights Law and the federal ADA."

company as a line attendant.  According to Sloth, she suffered numerous acts of gender discrimination and was subjected to a hostile working environment during her entire employment with Constellation Brands, which ended when she was fired from the Company on February 28, 2009.[3]

Sloth contends that during the "early 1980's", employee Harry Davis frequently un-hooked her bra. (Complaint at ¶ 26).  She also claims that in the early 1980's, defendant Clayton Brower ("Brower"), who was the plant supervisor at the time, repeatedly invited Sloth to meet him at a hotel for sexual relations. (Complaint at ¶ 33).  Plaintiff admitted at her Workers' Compensation hearing that she never told anyone about these alleged incidents until 2008. (Defendants' Statement of Undisputed Facts at ¶ 56, 57) Sloth contends that during the 1980's employee Dave Mitchell accosted her in a storage room and demanded that she have sex with him. (Complaint at ¶ 36).  Plant Supervisor Mike Hershberger also, on several occasions, allegedly made obscene and sexually graphic comments to Sloth. (Complaint at ¶ 41).  Sloth alleges that Hershberger showed her pornographic images on his computer, and gave her a photograph of a penis. (Complaint at ¶¶ 43, 44).  According to the defendants, employee Charito Crouse provided sworn testimony at plaintiff's workers' compensation

---

[3] Prior to her termination, plaintiff sought workers' compensation benefits for alleged injuries that occurred while she worked at Constellation as a result of the alleged discrimination she suffered.  After a hearing on the matter, plaintiff's claims for benefits were denied.

hearing stating that the picture was a "joke picture" that had been printed from a computer, that the picture was not of a penis, and that both Crouse and Sloth found the picture to be funny. Defendants contend that plaintiff did not complain about Hershberger's alleged behavior until 2008.   According to the defendants, Plaintiff admitted at her Workers' Compensation hearing that she never told anyone about these alleged incidents until 2008. (Defendants' Statement of Undisputed Facts at ¶¶ 76, 78).

Sloth alleges that during "the early 1990's" bottling room supervisor John Elliot ("Elliot") made repeated vulgar sexual advances towards her, and, after she refused his advances, assigned her to the dirtiest and most difficult jobs in the plant. (Complaint at ¶¶ 46-48).   She claims that Elliott also refused to promote or recommend Sloth for promotion in retaliation for her refusing to acquiesce to his advances. (Complaint at ¶ 49).   Sloth admitted that she never complained of this behavior until 2008, when she made the allegations to an independent medical examiner. Plaintiff admitted at her Workers' Compensation hearing that she never told anyone about these alleged incidents until 2008. (Defendants' Statement of Undisputed Facts at ¶ 91) .

Sloth alleges that in approximately 1993 or 1994, co-employee Sheldon Richardson ("Richardson") was assigned to work during plaintiff's shift.  She claims that upon his transfer to her shift, Richardson began sexually harassing her.   (Complaint at ¶ 51).

Sloth claims that she complained to management about Richardson's behavior, but that Constellation failed to take any action to prevent Richardson from harassing her. (Complaint at ¶ 52). Sloth claims that in 1994 or 1995, after a company picnic, Richardson and several other company employees went to her house, where plaintiff fell asleep. (Complaint at ¶¶ 53, 54). Although plaintiff in her Complaint alleges that she fell asleep, in her EEOC Complaint she claimed that she had passed out from drinking. (Defendants' Statement of Undisputed Facts at ¶ 104) She claims that upon awaking, she found Richardson standing over her, and that her blouse had been undone and her shorts unzipped. (Complaint at ¶¶ 54-58). Plaintiff claims that she complained of this conduct to Constellation, but that Constellation took no action because the alleged incident took place at Sloth's home. (Complaint at ¶¶ 60, 61). Plaintiff complained to the police regarding Richardson's conduct, but according to the defendant, no charges were ever brought. She alleges that Richardson continued to harass her after the incident. (Complaint at ¶¶ 59, 65, 66). Although plaintiff made numerous allegations about Richardson to Constellation management, none of her allegations could be substantiated, and in 1995, Sloth signed a letter prepared by Constellation acknowledging that the complaints she had made against Richardson were fabricated. (Defendants' Statement of Undisputed Facts at ¶ 503)

Sloth alleges that beginning in 1998, defendant John Bognaski, ("Bognaski") the director of East Coast Bottling Operations for Constellation, began "a long running an continuous pattern of <u>quid pro quo</u> sexual harassment and retaliation against [her]." (Complaint at ¶ 68). She claims that Bognaski attempted to kiss her, and warned her that he would have her fired if she told anyone about the incident. (Complaint at ¶¶ 70, 71). Thereafter, Bognaski allegedly assigned her to work with Richardson, despite her request not to work with him because of his alleged harassment and sexual assault. (Complaint at ¶¶ 74, 75). According to Bognaski, he played no role in making work assignments. (Defendants' Statement of Undisputed Facts at ¶ 515) After she refused a work assignment in which she was required to work with Richardson, she was disciplined. When Bognaski called her to his office asking her to explain her refusal to work with Richardson, he allegedly forced her to accompany him to a storage room where he forced her to perform oral sex on him. (Complaint at ¶¶ 79, 80, 82-85). Several of plaintiff's coworkers, including coworkers with whom plaintiff allegedly shared intimate details of her life, testified, or provided written statements indicating that plaintiff never complained of this alleged occurrence at the time it allegedly happened. (Defendants' Statement of Undisputed Facts at ¶¶ 410, 411, 480, 648, 658, 711, 712, 735, 745) Several of plaintiff's coemployes also testified at plaintiff's workers'

compensation hearing that it would have been impossible for Sloth to leave her work station on the production line without the entire line coming to a halt, and therefore, they did not believe that Sloth could have left her workstation and been forced to have sex in a storage room during working hours. (Defendants' Statement of Undisputed Facts at ¶ 654, 719) Still other coworkers, including Bognaski himself, testified that because his office was in a main hallway, had several windows, and was a conduit to other rooms used by employees, there was significant, often unannounced traffic in and near his office that would likely have prevented any type of improper physical assault of the plaintiff. (Defendants' Statement of Undisputed Facts at ¶¶ 420-428, 537-541, 623-626, 742)

In 2003, plaintiff finalized her divorce from her husband, and she alleges that Bognaski thereafter increased his interest in attempting to have sex with her, and began sexually harassing her more frequently. (Complaint at ¶ 86)  In 2006, Bognaski allegedly left a message on plaintiff's cell phone inviting her to join him after an evening of going out with her friends.  (Complaint at ¶ 97) Sloth claims that Bognaski was upset because Sloth's boyfriend and co-workers heard the message, and as a result, he allegedly gave her, or caused her to receive,  a poor annual work-review resulting in a smaller pay raise than other employees received. Complaint at ¶¶ 100, 102, 105).  Defendants claim that one of plaintiff's coworkers, Mary Henninger, who heard the voice message,

described it as "very short and completely innocuous" (Defendants'
Statement of Undisputed Facts at ¶ 196, 405), and that Bognaski did
not conduct the annual performance review.  (Defendants' Statement
of Undisputed Facts at ¶ 201).

Plaintiff alleges that during a wedding reception in April
2007, she became intoxicated after drinking "several alcoholic
beverages".  (Complaint at ¶ 111)  She claims that she woke up
naked on a bed at an unknown location, with Bognaski standing over
her claiming that he, "took advantage of [her]" (Complaint at ¶
112-115) Sloth claims that Bognaski threatened her that he would
fire her if she told anyone what had happened.  (Complaint at ¶
116) According to the defendants, Sloth testified at her Workers'
Compensation Hearing that she had been "drinking all day", and that
she did not know if she woke up in a truck or a room, and did not
know whether Bognaski had "taken advantage of her" because she "was
drunk."  (Defendants' Statement of Undisputed Facts at ¶¶ 208, 212,
213, 214, 222, 223).

In April 2008, plaintiff claims that she took a four week
vacation.  (Complaint at ¶ 118)  She alleges that Bognaski asked
her to call him while she was on vacation so he could meet her.
(Complaint at ¶ 119)  Sloth refused to, and upon returning to work,
Bognaski claimed that she "owed him" for failing to call him.
(Complaint at ¶ 121)

8

Thereafter, plaintiff alleges that Bognaski repeatedly attempted to get Sloth into his office alone. (Complaint at ¶ 126, 129) She claims that Bognaski told the Chief Executive Officer of the company that he was "fucking" her, and that in August, 2008, Bognaski told her that he "want[ed] to put [his] cock in [her] mouth." (Complaint at ¶¶ 134, 139). She claims that someone had carved the words "good morning nipples" into her work station, but that Bognaski refused to take any action after she reported it. (Complaint at ¶¶ 135, 136) Defendants claim that although plaintiff alleged in her EEOC charge that she showed the carving to employee Deborah Bilodeau, Bilodeau gave sworn testimony stating that she had never seen such a carving, and had never heard of such an allegation until plaintiff's Workers' Compensation hearing in 2009. (Defendants' Statement of Undisputed Facts at ¶¶ 242, 244, 245, 687).

In August, 2008, plaintiff alleges that Bognaski retaliated against her for failing to engage in sexual activity with him by scheduling her to work with Richardson. (Complaint at ¶ 141) Plaintiff's requests to be reassigned were refused, and plaintiff was sent home to consider whether or not she would accept her work assignment or face termination of her employment. (Complaint at ¶ 145). Plaintiff returned to work, but continued to complain about being assigned to work with Richardson, and met with defendant Bagshaw to complain about Bognaski's alleged sexual assaults and

harassment.   (Complaint at ¶ 151)   Thereafter, a few days later,
plaintiff alleges that she suffered severe chest pain and shortness
of breath as a result of having told Bagshaw about Bognaski's
behavior. (Complaint at ¶ 153) At some unspecified date, plaintiff
alleges that she took medical leave from her employment to be
treated for post-traumatic stress disorder and agoraphobia
resulting from the hostile work environment to which she was
subjected.  (Complaint at ¶ 154) She claims that approximately 6
months after disclosing Bognaski's alleged sexual assaults and
behavior, and after filing a charge of discrimination with the EEOC
on August 27, 2008, she was fired from her employment on or about
February 28, 2009.   (Complaint at ¶ 156) According to the
defendants, Sloth's employment was terminated because her approved
medical leave expired, and in the company's estimation, plaintiff
was not able to return to work. (Defendants' Statement of
Undisputed Facts at ¶¶ 508, 511)

In August 2008, after leaving work with chest pains and while
on medical leave, Sloth filed a claim for workers' compensation
benefits claiming that she suffered work-related injuries of post
traumatic stress disorder, panic disorder, and agoraphobia as a
result of the sexual harassment she endured at Constellation.  A
hearing was held at which 13 witnesses testified regarding whether
or not Sloth suffered her alleged injuries as a result of events
that occurred at her workplace.  By Decision dated November 30,

2009, Workers' Compensation Board Judge Ronald McEvoy found that Sloth was disqualified from obtaining workers' compensation benefits because she "knowingly made false statements and representations on [her claim form] and to the doctor's who examined her and during the course of her testimony under oath as to the material facts for the purpose of obtaining compensation." As a result, Judge McEvoy denied plaintiff's compensation claim.

Plaintiff appealed Judge McEvoy's determination to the Administrative Review Division of the Workers' Compensation Board (the "Appeals Board"). In a Decision dated June 30, 2010, the Appeals Board declined to decide whether or not Sloth was disqualified from receiving benefits for having made false statements to the Workers' Compensation Board, and instead held that the plaintiff had failed to present any credible evidence that she suffered a compensable injury while employed at Constellation. In so holding, the Appeals Board noted the plaintiff presented no evidence that she had ever been treated for any anxiety, depression, or stress disorder prior to September, 2008; that not a single witness who testified at plaintiff's hearing or submitted a sworn statement supported plaintiff's allegations of harassment; and that there was no credible evidence that Richardson had harassed Sloth.

Thereafter, on January 24, 2011, plaintiff filed the instant case alleging gender, racial, national origin, and age discrimination.

DISCUSSION

I.    Standard of Review

A.    Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept...all factual allegations in the complaint and draw...all reasonable inferences in the plaintiff's favor." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks omitted). In order to withstand dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal quotation marks omitted).[4]  For purposes of a motion to dismiss, the court will deem the complaint to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.2000).

---

[4]See also Goldstein v. Pataki, 516 F.3d 50, 56-57 (2d Cir.2008) (quoting Twombly, 127 S.Ct. at 1974) ("at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'")

B.   <u>Summary Judgment</u>

Rule 56© of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.   <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.   <u>Scott</u>, 550 U.S. at 380 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)).

II.  <u>Federal Discrimination Claims against Individual Defendants</u>

Counts One, and Three of the plaintiff's Complaint claim that defendants John Bognaski, John Elliott, Sheldon Richardson, Barbara Bagshaw and Clayton Richardson all discriminated against the plaintiff in their individual capacities in violation of Title VII, and the ADEA.   The Second Circuit has held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."   <u>Tomka v. The Seiler Corporation</u>, 66 F. 3d 1295, 1313 (2d Cir. 1995).   Thus, the

statutory scheme of Title VII only permits recovery against an employer-entity.  Both the ADA and ADEA are analogous to Title VII regarding individual liability and, therefore, individuals cannot be held liable under either the ADEA, Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.), cert. denied, 115 S.Ct. 666 (1994), or the ADA. Altman v. New York City Health & Hospital Corp., 903 F.Supp. 503, 508 (S.D.N.Y. 1995) Accordingly, plaintiff's Title VII, and ADEA claims are dismissed against the individual defendants with prejudice.  To the extent the Complaint attempts to allege a cause of action under the ADA against any of the individual defendants, such a cause of action is dismissed with prejudice.

    III. ADEA and ADA Claims.

    The ADEA provides that prior to bringing an action in federal court for age discrimination, a plaintiff must first file administrative charges against the parties that allegedly discriminated against him.  29 U.S.C. § 626(d).  Similarly, it is well-settled that "the exhaustion of administrative remedies is a prerequisite to a civil action in federal court on a claim under the ADA." Paluh v. HSBC Bank USA, 409 F.Supp.2d 178, 196 (W.D.N.Y., 2006) (Foschio, M.J.)(citing Curto v. Edmundson, 392 F.Supp. 502, 503 (2d Cir. 2004).  "A plaintiff's failure to exhaust administrative remedies as to an ADA claim renders the district court without jurisdiction over such claims in a civil action in

14

federal court." <u>Paluh</u>, 409 F.Supp.2d at 196 (citing <u>Polera v. Board of Educ. of Newburgh Enlarged City School District</u>, 288 F.3d 478, 480 (2d Cir.2002).

A district court lacks jurisdiction over claims which were not made in an administrative complaint or which are not reasonably related to allegations made in the administrative complaint. <u>Butts v. City of N.Y. Dept. of Housing</u>, 990 F.2d 963 (2nd Cir. 1984). A claim made in a federal action is considered reasonably related to a claim made in an administrative action if "the conduct complained of would fall within the 'scope of the [administrative] investigation which can reasonably be expected to grow out of the [administrative] charge . . . .'" <u>Fitzgerald v Henderson</u>, 251 F.3d 345, 359-60 (2nd Cir. 2001)(quoting <u>Cornwell v. Robinson</u>, 23 F.3d 694, 706 (2nd Cir. 1994)).

In the instant case, there is no evidence that plaintiff exhausted her administrative remedies with respect to her claims of age or disability discrimination. Plaintiff's administrative complaint filed with the EEOC alleged only gender discrimination, in the form of sexual harassment. Similarly, her amended EEOC Complaint failed to allege disability, age, or racial discrimination. Although the form on which plaintiff filed her initial administrative complaint contained check-off boxes for other forms of discrimination, including disability or age discrimination, plaintiff did not check-off these boxes, nor did

15

she allege age or disability discrimination anywhere in her administrative complaint.  Because plaintiff did not raise age or disability discrimination in her administrative proceedings, and because claims of age and disability discrimination would not reasonably fall within the scope of an administrative investigation into sexual harassment, I find that plaintiff has failed to exhaust her administrative remedies with respect to her claims of age and disability discrimination, and I therefore dismiss plaintiff's ADEA and ADA claims with prejudice.  See e.g., McPhatter v. New York City, 2009 WL 2412980 at * 6 (E.D.N.Y., July 30, 2009)("a claim of gender discrimination cannot be said to be "reasonably related" to a claim of discrimination based on race, color, or disability."); Morales v. City of New York Dept. of Juvenile Justice, 2012 WL 180879 at *4 (S.D.N.Y., Jan. 23, 2012)(dismissing as unexhausted claims of age, gender and disability discrimination on grounds that they were not reasonably related to plaintiff's claims of racial discrimination); Chen v. Citigroup Inv., Inc., 2004 WL 2848539 at *2 (S.D.N.Y., Dec. 9, 2004) (claims of race, color, sex, religion and/or national origin discrimination are not reasonably related to claims of disability discrimination.").

IV.  Title VII Claims

A.  Claims of Race, National Origin, and Color Discrimination

Title VII of the Civil Rights Act of 1964, prohibits an employer from "hir[ing] or . . . discharg[ing] any individual, or

16

otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2.  As with claims under the ADEA and ADA, it is well settled that prior to bringing a Title VII discrimination claim in federal court, a plaintiff must first exhaust his or her administrative remedies by filing an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"), or with a state agency authorized to investigate the allegations.  45 U.S.C. § 2000e-5(c)(Title VII claims)

In the instant case, although the plaintiff filed an administrative claim of gender discrimination in violation of Title VII, her initial and amended administrative complaints alleged only that she was discriminated against on the basis of her gender, and not that she was subjected to discrimination on the basis of her race, national origin, or color.  Because plaintiff has failed to exhaust her administrative remedies with respect to those claims, I grant defendants' motion to dismiss plaintiff's Title VII claims of race, national origin, and color discrimination with prejudice.

B.   Time-Barred Claims

Claims brought pursuant to Title VII are subject to a strict limitations period.  Specifically, a plaintiff must bring claims of discrimination to the EEOC within 300 days of the allegedly

17

discriminatory act or acts.  42 U.S.C. § 2000e-5(e)(1).  In the instant case, plaintiff filed her EEOC complaint on August 27, 2008.  As a result, only those acts occurring on or after November 1, 2007 are timely for purposes of plaintiff's Title VII claims.

Plaintiff contends that her allegations of discrimination occurring prior to November 1, 2007 may be considered by the court because they form part of a continuing pattern of discrimination. Under this "continuing violation" theory of liability:

> if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.

Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993), cert. denied, 511 U.S. 1052 (citations omitted).  Separate and discrete discriminatory acts, however, do not constitute a continuing violation where they do not "[involve] specific discriminatory policies or mechanisms such as discriminatory seniority lists . . . or discriminatory employment tests . . . ." Id.  Accordingly, the mere allegation of a series of discrete actions without allegation that the actions were part of a policy or mechanism of discrimination, is insufficient to establish that a continuing violation of Title VII rights has occurred.  Rather, Lambert requires that a "specific discriminatory policy" be shown which amounts to more than a string of allegedly discriminatory acts

committed with one motive in mind.  Id.  Accordingly, allegations of multiple instances of unlawful conduct, even if similar, do not, by themselves implicate the doctrine.  Id.  Moreover, the "continuing violation" doctrine is strongly disfavored by courts in this Circuit.  Lee v. Saltzman, 2011 WL 5979162 at * 5 (W.D.N.Y., November 27, 2011)(Skretny, C.J.).

In the instant case, plaintiff has merely alleged a series of discrete acts, principally by Bognaski that are not part of a corporate policy or mechanism of discrimination, and thus, plaintiff's allegations of discrimination by various employees occurring prior to November 1, 2007 and dating back to the early 1980's are not timely.  I therefore consider only those alleged acts that occurred on or after November 1, 2007 in determining whether or not plaintiff has stated a claim of gender discrimination under Title VII.

C.  Hostile Work Environment and Quid pro quo Discrimination claims.

Plaintiff alleges that she was subjected to a hostile work environment and quid pro quo discrimination while employed with Constellation.  Although related, claims of a hostile work environment and quid pro quo sexual harassment are distinct theories of discrimination both, of which are recognized under Title VII.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)(distinguishing between claims of quid pro quo sexual harassment and hostile working environment and recognizing both);

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752 (1998);
Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 603 (2nd
Cir., 2006).   A quid pro quo claim of discrimination is asserted
when a plaintiff alleges that she was subjected to sexual demands
from a supervisor, and suffered tangible, adverse employment action
as a result of her refusal to acquiesce to those demands.  Schiano,
445 F.3d at 603.  If, however, a plaintiff does not suffer tangible
adverse employment actions as a result of her refusal to submit to
sexual demands, she may state a claim for a hostile work
environment, provided the conduct she is subjected to is "severe
and pervasive."  Burlington Industries, 524 U.S. at 754.  I discuss
plaintiff's allegations of quid pro quo discrimination a hostile
working environment separately.

    1.    Quid Pro Quo Discrimination Claims

    To state a claim of quid pro quo gender discrimination, "'a
plaintiff must present evidence that she was subject to unwelcome
sexual conduct, and that her reaction to that conduct was then used
as the basis for decisions affecting compensation, terms,
conditions, or privileges of her employment.'"  Gregg v. New York
State Department of Taxation & Finance, 1999 WL 225534 (S.D.N.Y. ,
April 19, 1999)(quoting Kariban v. Columbia University, 14 F.3d
773, 777 (2nd Cir. 1994).  Thus under a quid pro quo theory of
discrimination, "[w]hen a plaintiff proves a tangible employment
action resulted from a refusal to submit to a supervisor's sexual

demands, he or she establishes that the employment decision itself constitutes a change in the terms or conditions of employment that is actionable under Title VII." <u>Burlington Industries v. Ellerth</u>, 524 U.S. 742, 751-754 (1998).  In this case, Sloth has alleged that she was subjected to unwelcome sexual advances from Bognaski, and that as a result of her refusal to accede to Bognaski's demands, she was threatened with termination of her employment and subjected to unfavorable treatment.  She further alleges that as a result of the unfavorable treatment, she was suspended from work, and ultimately could not continue to work because of the continued fear of reprisals from Bognaski for failing to succumb to his unwanted sexual assaults.  Such allegations state a claim of <u>quid pro quo</u> sexual harassment.

     2.   <u>Hostile Working Environment Claims</u>

To state a claim of discrimination based on a hostile work environment, a plaintiff must demonstrate "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 715 (2nd Cir. 1996)(<u>quoting</u> <u>Murray v. New York Univ. College of Dentistry</u>, 57 F.3d 243, 249 (2d Cir.1995)).  The conduct alleged must be severe and pervasive enough to create an environment that "would

reasonably be perceived, and is perceived, as hostile or abusive."
Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993).
Moreover, the conduct must be "objectively hostile."  Id.

In this case, plaintiff alleges that she was routinely solicited for sexual encounters by her boss, and that she was threatened with losing her job if she failed to succumb to his demands.  Such an allegation states a claim of a hostile working environment. Jansen v. Packaging Corp. of America, 123 F.3d 490, 567 (7th Cir., 1997)("when the supervisor makes constant demands for sex in exchange for job benefits (maybe in jest, maybe not), the victim surely suffers from a "hostile environment" at the same time as she endures the "quid pro quo" harassment.") Because plaintiff has stated a claim for a hostile work environment and quid pro quo sexual harassment, I deny defendants' motion to dismiss these claims.

IV.  Section 1981 Claims

42 U.S.C. § 1981 provides in relevant part that:  "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts .
. . . as is enjoyed by white citizens . . . ." 42 U.S.C.A. § 1981
(1994).  To state a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant, and (3) the discrimination

concerned one or more of the activities enumerated in the statute . . . ." <u>Mian v. Donaldson, Lufkin & Jenrette Securities</u>, 7 F.3d 1085 (2nd Cir. 1993) (citation omitted). "Essential to an action under section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." <u>Albert v. Caravano</u>, 851 F.2d 561, 571 (2nd Cir. 1988) (citations omitted).

Plaintiff alleges that "[t]hroughout her employment with defendants, Plaintiff was ridiculed and insulted by coworkers because of her national origin such as being told to go back to her country [sic]" (Complaint at ¶ 29). She claims that management was aware of the conduct, but failed to stop it, and that upon information and belief, she was denied training and promotional opportunities because of her national origin, and was treated worse than employees who were of a different race or national origin with respect to training, job opportunities, promotions, and discipline. (Complaint at ¶ ¶ 30-32). These are the only allegations regarding racial or national origin discrimination contained in plaintiff's 22 page, 168 paragraph Complaint.

Initially, I note that national origin discrimination is not prohibited under 42 U.S.C. § 1981. <u>Anderson v. Conboy</u>, 156 F.3d 167, 170 (2nd Cir., 1998)("It is also settled that Section 1981 does not prohibit discrimination on the basis of . . . national origin . . . .)(<u>citing</u> <u>Saint Francis College v. Al-Khazraji</u>, 481 U.S. 604, 613 (1987)). Accordingly, to the extent that Sloth alleges a

violation of Section 1981 based on national origin discrimination, such claims are not cognizable.

Excluding plaintiff's claims of national origin discrimination, her only claim of racial discrimination is a single averment that she was treated differently than "similarly situated coworkers of a different race . . . with respect to training, job opportunities, promotion and discipline."  (Complaint at ¶ 32). Plaintiff fails to allege when this discrimination allegedly occurred, or how she was treated differently or worse than non-Filipino employees.  Accordingly, I find that plaintiff has failed to state a claim for racial discrimination under Section 1981, and I grant defendants' motion to dismiss plaintiff's Section 1981 claims.

V.   <u>State Law Claims</u>

Plaintiff alleges in Count Two of her Complaint that she was subjected to sexual harassment in violation of the New York Human Rights Law.  Complaint at 164.  Although claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII.  <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708 (Cir. 1996).  <u>See</u> <u>Haywood v. Heritage Christian Home, Inc.</u>, 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(Noting that both claims are governed by <u>McDonnell Douglas</u> standard.]), there are two significant differences between Title VII and New York Human Rights Law claims.  First, under the New York Human

Rights Law, individual defendants may be held liable for discrimination if it can be shown that they have "aid[ed], abet[ted], incite[d], compel[ed] or coerce[d] the doing of any . . . forbidden [discriminatory act]" under this article, or attempt[ed] to do so." N.Y. Exec. Law § 296(6). Therefore, individuals who may or not be employers as that term is defined in the Human Rights Law may nevertheless be held personally liable for employment discrimination under § 296 of the Human Rights Law. Tomka, 66 F.3d at 1317 (citing N.Y. Exec. Law § 296(6) (McKinney 1993)).

Second, the statute of limitations for claims brought pursuant to the New York State Human Rights Law is different than the statute of limitations for claims brought under Title VII. As set forth above, the statute of limitations for claims brought pursuant to Title VII is 300 days from the date on which an administrative complaint is brought before the EEOC. Under the New York Human Rights Law, however, the limitations period runs for three years from the date on which an action asserting Human Rights Law violations is filed. N.Y.C.P.L.R. § 214(2) (McKinney's 2008); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir., 1998) ("[Plaintiff's] cause of action under New York's Human Rights Law is governed by a three-year statute of limitations, measured from the filing of the action in court.") The three year limitations period, however, is tolled "for the period between the filing of an

EEOC charge and the issuance by the EEOC of a right-to-sue letter." DeNigris v. New York City Health and Hospitals Corp., --- F.Supp.2d ----, 2012 WL 955382, *5 (S.D.N.Y., March 9, 2012)(citing Wilson v. New York City Police Dept., 2011 WL 1215735, *4 (S.D.N.Y. Mar.25, 2011))[5].

In the instant case, plaintiff's administrative complaint was filed with the EEOC on August 27, 2008, and according to the Complaint, a right-to-sue letter was issued by the EEOC on October 28, 2010.  Accordingly, the limitations period in this action is tolled by two years, two months, and two days-the period during

---

[5] Although defendants contend, without citation or attribution, that the statute of limitations for Human Rights Law claims is three years, neither defendants nor plaintiff address the numerous cases decided by federal district courts siting in New York holding that the three-year limitations period is tolled by the filing of an administrative complaint with the EEOC. See Esposito v. Deutsche Bank AG, 2008 WL 5233590, *5 (S.D.N.Y., December 16, 2008) (stating that "[a]lthough the Second Circuit has yet to definitively opine on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under [the New York Human Rights Law] . . . numerous courts in this Circuit have held that the three-year statute of limitations applicable to claims under NYSHRL . . . 'is tolled during the period in which a complaint is filed ... with the EEOC.'")(quoting Lee v. Overseas Shipping Corp.,, 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001); See also, Butler v. New York Health & Racquet Club, 768 F.Supp.2d 516, 536 (S.D.N.Y., 2011); Smith v. Tuckahoe Union Free School Dist., 2009 WL 3170302 at * 11 (S.D.N.Y., September 30, 2009);  Siddiqi v. New York City Health & Hosp. Corp., 2008 WL 3833869, at *18 (S.D.N.Y. Aug. 12, 2008); Ritterband v. Hempstead Union Free School Dist., 2008 WL 3887605, at *9 n. 9 (E.D.N.Y. Aug. 20, 2008).
     While some state law claims, such as tort claims, may not be tolled by the filing of an EEOC complaint, (see Carlson v. Geneva City School Dist., 679 F.Supp.2d 355, 370-71 (W.D.N.Y., 2010)(Siragusa, J.)(acknowledging split in authority as to whether or not filing of an EEOC complaint tolls the statute of limitations for a state law claim, and concluding that tort claims are not tolled); Smith, 2009 WL 3170302 at * 11 ("[w]ith respect to state law torts, the overwhelming weight of authority is that the filing of an EEOC charge does not toll the statute of limitations.")) by statute, state Human Rights law claims are tolled by the filing of an administrative complaint with the New York State Division of Human Rights, (N.Y. Exec. L. § 297(9)and courts in this Circuit have extended the tolling period to administrative complaints filed with the EEOC.

which plaintiff's administrative complaint was pending before the EEOC.  The Complaint in this case was filed on January 24, 2011. As a result The three year statute of limitations, with the addition of the two year, two month, and two day tolling period renders claims made on or after November 22, 2005, timely for purposes of state Human Rights Law claims.

With respect to individual defendant Richardson, there is no allegation in the Complaint that after November 22, 2005, he engaged in any discriminatory action, or engaged in, or attempted to engage in, any activity that aided, abetted, incited, compelled, or coerced any prohibited discriminatory act.  With respect to defendant Brower, the only conduct he is accused of after November 22, 2005 is meeting with the plaintiff "one or two times" during the course of several days after she refused in August, 2008 to work on the same line as defendant Richardson.  (Complaint at ¶ 149).  Such an allegation fails to allege any violation of the New York Human Rights law.

With respect to defendant Elliot, plaintiff fails to allege that he engaged in any harassing activity on or after November 22, 2005.  Although plaintiff alleges that after November 22, 2005, Elliot: (1) scheduled her to work with Richardson after being told to do so by Bognaski; (2) refused to change her work schedule to accommodate her request that she not work on the same line as Richardson; and (3)  screamed at her for refusing to work on the

same line as Richardson,[6] these allegations fail to allege that
Elliot engaged in, or attempted to engage in, any activity that
aided, abetted, incited, compelled, or coerced any prohibited
discriminatory act under the Human Rights Law.

With respect to defendant Bagshaw, plaintiff alleges that she
told Bagshaw in August, 2008, that she had been subjected to sexual
assaults and harassment by Bognaski. (Complaint at ¶ 151). Sloth
contends that Bagshaw promised to investigate her complaints
(Complaint at ¶ 152) but there is no allegation that Bagshaw
investigated the complaints or failed to do so. Rather, Sloth
alleges that a few days after she made her complaint about Bognaski
to Bagshaw, she felt pain and tightness in her chest, and left
work. (Complaint at ¶ 153) According to the defendants, Sloth
never returned to work. Defendants also allege, without dispute
from the plaintiff, that Sloth made several complaints to Bagshaw
over the course of her employment, that Bagshaw investigated
Sloth's complaints, and that Sloth acknowledged in writing that
complaints she had made to Bagshaw were without merit. Defendants'
Statement of Undisputed Facts at ¶ 503. Plaintiff's allegation
that she expressed complaints to Bagshaw, without any additional

---

[6] It should be noted that based on the defendants' statement of
undisputed facts, which has not been controverted by the plaintiff, that
plaintiff did not object to working during the same shift as Richardson, or
even in close proximity to Richardson Rather, Sloth objected to working on the
same production line as Richardson, even though Richardson could be physically
farther away from her on the same production line than he might be on an
adjacent production line. See Defendants' Statement of Undisputed Facts at ¶¶
576, 578, 579)

allegations as to whether or not Bagshaw acted on the complaints, fails to allege that Bagshaw engaged in, or attempted to engage in, any activity that aided, abetted, incited, compelled, or coerced any prohibited discriminatory act under the Human Rights Law.

Based on the above determinations, I find that plaintiff has failed to state a claim under the New York Human Rights Law against defendants Elliott, Richardson, Bagshaw, and Brower, and I grant defendants' motion to dismiss these claims.  Additionally, for the reasons set forth above, I find that plaintiff has stated a claim of quid pro quo sexual harassment and a hostile work environment under the New York Human Rights Law against defendants Constellation Brands and Bognaski, and therefore, may proceed with those claims.

Defendants contend that plaintiff's state law claims, but not her Title VII claims, are barred from consideration by this court under the doctrines of res judicata and/or collateral estoppel because plaintiff has already litigated these claims before the Workers' Compensation Board.[7]  According to the defendants, the Workers' Compensation Board found that plaintiff did not sustain any work related injuries while employed at Constellation, and therefore, the Board's finding prohibits plaintiff from alleging sexual harassment in this action.  I find, however, that the

---

[7] Defendants also contend that plaintiff's Section 1981 claims are barred by res judicata and collateral estoppel.  However, because I have dismissed plaintiff's Section 1981 claims on other grounds, I do not address defendants' res judicata and collateral estoppel arguments as they pertain to Section 1981.

doctrine of res judicata is inapplicable to this action, and that the doctrine of collateral estoppel does not prohibit plaintiff from raising the issue of unlawful sexual harassment under the New York Human Rights law in this action.

The doctrine of res judicata, sometimes called "claim preclusion" provides that where a final judgment on the merits of a claim has been rendered by a court of competent jurisdiction, the parties to that dispute are precluded from bringing any further causes of action with respect to those decided claims. Cromwell v. County of Sac, 94 U.S. 351, 352 (1877); Lawlor v. National Screen Service Corp., 349 U.S. 322, 326 (1955).  Moreover, under New York law, res judicata will bar a later claim "'arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994).  The bar to subsequent claims based on a different legal theory will not, however, apply where "the initial forum did not have the power to award the full measure of relief sought in the later litigation.' " Id.  See also Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir.1994).

In the instant case, it is without dispute that the Workers' Compensation Board was without jurisdiction to consider or award plaintiff damages and/or equitable relief on her Human Rights Law discrimination claims.  Accordingly, because the initial forum

lacked the authority to grant plaintiff her full measure of relief for discrimination claims, the doctrine of res judicata cannot prevent her from bringing such claims here.

Under the doctrine of collateral estoppel, sometimes referred to as "issue preclusion," in cases where a specific issue (as opposed to a legal claim) has been actually litigated and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, (1979). In this case, defendants allege that the issue of whether or not Sloth was subjected to sexual harassment was litigated before the Workers' Compensation board, and that the Board necessarily decided that she had not been subjected to such harassment. Defendants therefore claim that Sloth's harassment claims are precluded under the doctrine of collateral estoppel.

I find, however, that the issue of whether or not Sloth suffered sexual harassment while working at Constellation was not actually decided by the Workers' Compensation Board, and therefore, plaintiff is not precluded from raising this issue in the instant action. Judge McEvoy, in finding that plaintiff did not qualify for workers' compensation benefits, held that plaintiff had failed to establish that she suffered her claimed mental injury at work. In so holding, Judge McEvoy determined that the plaintiff had lied

about her injury at her hearing, to her doctors, and on her application for workers' compensation benefits.  Based on the plaintiff's lack of credibility and making of false statements, Judge McEvoy determined that she had violated statutory law prohibiting the making of false statements in connection with an attempt to obtain workers' compensation benefits, and therefore was disqualified from receiving such benefits.

It is clear from Judge McEvoy's two-page written decision that he did not decide whether or not plaintiff suffered sexual harassment, but instead decided that plaintiff had not suffered a mental injury at work.  While it could be *inferred* from Judge McEvoy's Decision that no harassment took place, Judge McEvoy did not explicitly make such a finding, and therefore, it can not be said that he decided that issue or that such a finding was "necessary" to his ruling that plaintiff was not entitled to workers' compensation benefits.  As a result collateral estoppel can not be applied to Judge McEvoy's determination.

Similarly, the Workers' Compensation Board, which affirmed Judge McEvoy's determination, found that plaintiff had failed to establish a mental or stress-related injury resulting from sexual harassment in the workplace.  While the Board's opinion stated that evidence submitted by Constellation "rebut[ted] the claimant's allegations and testimony of sexual harassment in the workplace" the Board did not make a finding that sexual harassment by Bognaski

did not occur.  The only explicit finding made by the Board was that there was "no convincing credible evidence that [Richardson] had harassed the claimant in the past."  This finding, however, is immaterial to plaintiff's current claims as this court has held that the allegations against Richardson are time-barred.  Because the Board did not decide as a necessary issue that plaintiff had not suffered sexual harassment, but decided instead that plaintiff had not suffered a mental injury as a result of alleged harassment, I find that collateral estoppel does not bar plaintiff from raising her New York Human Rights Law claim of sexual harassment.

In support of their contention that collateral estoppel applies in this case and precludes plaintiff from raising her Human Rights Law claim of discrimination, defendants cite Paone v. Wynantskill Detention Center, an unreported decision from the New York State Supreme Court, Rensselaer County, in which the court held that a plaintiff's Title VII and New York State Human Rights Law claims of discrimination were precluded by a determination made by a Workers' Compensation Board Judge that the plaintiff had not sustained an alleged mental injury.  Paone v. Wynantskill Detention Center, 25 Misc.3d 1225(A), 906 N.Y.S.2d 774 (Table) (N.Y.Sup., October 21, 2009).  I respectfully decline to follow the reasoning set forth in Paone, however, on grounds that such an application of collateral estoppel would be patently unfair under the facts of this case.

It is well settled that collateral estoppel may be applied to decisions of administrative agencies sitting in a "quasi-judicial" capacity.   However, collateral estoppel will apply only where "giving a preclusive effect to the administrative proceeding would not be unfair or unexpected." Taylor v Brentwood Union Free School District, 908 F.Supp. 1165, 1178 (E.D.N.Y. 1995)(emphasis added)(citing Long island Lighting Co. v. Imo Industries Inc., 6 F.3d 876, 885-86, (2nd Cir., 1993).   In the instant case precluding a party that has sought workers' compensation benefits from later raising an employment discrimination claim would be highly unexpected, as the Workers' Compensation Board has no jurisdiction to resolve discrimination claims.   See Hill v. Coca Cola Bottling Co. Of New York, 786 F.2d 550, 554 (2nd Cir., 1986)(recognizing that under the facts of the case before it, it could not have been foreseen by the plaintiff that brining a claim for unemployment benefits would have bared a subsequent anti-discrimination complaint).   I find in this case, that plaintiff could not have foreseen that seeking workers' compensation benefits would have prohibited her from subsequently bringing a discrimination claim under the New York Human Rights Law.   I therefore decline to bar her New York Human Rights Law claims under the doctrine of collateral estoppel.

CONCLUSION

For the reasons set forth above, I grant defendants' motion to dismiss Count Three of the Complaint alleging violations of the ADEA with prejudice.  I grant defendants' motion to dismiss Count Four of plaintiff's Complaint alleging violations of 42 U.S.C. § 1981.  I further grant defendants' motion to dismiss plaintiff's ADA claims, and all federal claims against the individual defendants with prejudice.  Plaintiff's Title VII claims alleging race, national origin and/or color discrimination are dismissed with prejudice.  Plaintiff's Human Rights Law claims are dismissed against defendants Elliott, Richardson, Bagshaw, and Brower.

Plaintiff may proceed on her Title VII and New York Human Rights Law claims of hostile work environment and quid pro quo sexual harassment against defendant Constellation, and her New York Human Rights Law claims of hostile work environment and quid pro quo sexual harassment against defendant Bognaski.  Plaintiff's Title VII claims are limited to those claims accruing on or after November 1, 2007, and her New York State Human Rights Law claims are limited to those claims accruing on or after November 22, 2005.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
     Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          June 8, 2012

35