UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICKY SLOTH,

                     Plaintiff,

v.

CONSTELLATION BRANDS, INC., JOHN BOGNASKI,
JOHN ELLIOT, SHELDON RICHARDSON,
BARBARA BAGSHAW, CLAYTON BROWER, individually
and in their Official Capacities

                     Defendants.
_____

**DECISION
and ORDER**

11-CV-6041T

## INTRODUCTION

Plaintiff Vicky Sloth ("Sloth"), brings this employment discrimination claim against the defendants claiming that she was sexually harassed during the entire course of her 28-year employment with defendant Constellation Brands, ("Constellation") and retaliated against for complaining of sexual harassment. By Decision and Order dated June 8, 2012, I granted in-part and denied in-part defendants' motion to dismiss, or, in the alternative, for summary judgment. Specifically, I dismissed the majority of plaintiff's claims, but permitted her to proceed on her federal and state claims of hostile work environment and quid pro quo sexual harassment against defendant Constellation, and her state law claims of hostile work environment and quid pro quo sexual harassment against defendant Bognaski. Plaintiff's claims of retaliation were not addressed by the court.

Defendants now move for reconsideration of this court's Decision and Order arguing that this court failed to give

appropriate consideration to findings of fact made by the New York State Workers' Compensation Board ("the Board" or "WCB") in a case denying plaintiff's claim for worker's compensation benefits. Defendants contend that this court is required to adopt the findings of the Workers' Compensation board, or at the very least, give substantial weight to the factual findings of the Board. Defendants argue that if the Board's findings are given appropriate weight, then defendants are entitled to summary judgment because the findings of the Board establish that the plaintiff did not suffer any sexual harassment or discrimination, nor was she retaliated against.  Defendants further contend that the court failed to appropriately calculate the tolling period for plaintiff's state law claims, and failed to address defendants' request that plaintiff's retaliation claims be dismissed.

Plaintiff objects to defendants' motion, but failed to timely file an opposition memorandum of law to the defendants' motion. For the reasons set forth below, I deny defendants' motion for reconsideration.  Because I find that plaintiff is not prohibited by the doctrines of res judicata or collateral estoppel from litigating her discrimination claims in this court, and that the findings of the Workers' Compensation Board are not entitled to substantial weight such that they would preclude the plaintiff from proceeding on her claims in this court, I deny the request for reconsideration of this court's partial denial of defendants'

motion for summary judgment.  With respect to the defendants' claim that this court inappropriately calculated the tolling period for plaintiff's state law claims, I deny defendants' request for reconsideration.  Finally, as to defendants' claim that this court failed to address defendants' motion for dismissal, or summary judgment, with respect to plaintiff's claim of retaliation, I find, for the reasons set forth below, that plaintiff has stated a prima facie case of retaliation, and that disputed questions of fact preclude, for the time being, any grant of summary judgment.

<u>BACKGROUND</u>

The following factual allegations were set forth in my June 8, 2012 Decision and Order, and although they are lengthy and complicated, they are set forth again here for purposes of clarity.[1]  As a general matter, the defendants deny all of plaintiff's claims of harassment or discrimination.

Plaintiff Vicky Sloth became employed by Constellation Brands in December, 1980.  Constellation is a producer and distributer of wines and spirts, and Sloth worked in the production area of the company as a line attendant.  According to Sloth, she suffered numerous acts of gender discrimination and was subjected to a hostile working environment during her entire employment with Constellation Brands, which ended when she was fired from the Company on February 28, 2009.

---

[1] Citations to the record found in my June 8, 2012 Decision and Order are omitted here.

Sloth alleges a litany of complaints dating to the very beginning of her employment with Constellation. She contends that during the "early 1980's", employee Harry Davis frequently un-hooked her bra. She also claims that in the early 1980's, defendant Clayton Brower ("Brower"), who was the plant supervisor at the time, repeatedly invited Sloth to meet him at a hotel for sexual relations. Plaintiff admitted at her Workers' Compensation hearing that she never told anyone about these alleged incidents until 2008.[2] Sloth contends that during the 1980's employee Dave Mitchell accosted her in a storage room and demanded that she have sex with him. Plant Supervisor Mike Hershberger ("Hershberger") also, on several occasions, allegedly made obscene and sexually graphic comments to Sloth. Sloth alleges that Hershberger showed her pornographic images on his computer, and gave her a photograph of a penis. According to the defendants, employee Charito Crouse provided sworn testimony at plaintiff's workers' compensation hearing stating that the picture was a "joke picture" that had been printed from a computer, that the picture was not of a penis, and that both Crouse and Sloth found the picture to be funny. Defendants contend that plaintiff did not complain about Hershberger's alleged behavior until 2008. According to the defendants, Plaintiff admitted at her Workers' Compensation hearing

---

[2] Prior to her termination, plaintiff sought workers' compensation benefits for alleged injuries that occurred while she worked at Constellation as a result of the alleged discrimination she suffered. After a hearing on the matter, plaintiff's claims for benefits were denied.

that she never told anyone about these alleged incidents until 2008.

Sloth alleges that during "the early 1990's" bottling room supervisor John Elliot ("Elliot") made repeated vulgar sexual advances towards her, and, after she refused his advances, assigned her to the dirtiest and most difficult jobs in the plant.  She claims that Elliott also refused to promote or recommend her for promotion in retaliation for her refusing to acquiesce to his advances.  Sloth admitted that she never complained of this behavior until 2008, when she made the allegations to an independent medical examiner.  Plaintiff admitted at her Workers' Compensation hearing that she never told anyone about these alleged incidents until 2008.

Sloth alleges that in approximately 1993 or 1994, co-employee Sheldon Richardson ("Richardson") was assigned to work during plaintiff's shift.  She claims that upon his transfer to her shift, Richardson began sexually harassing her.  Sloth claims that she complained to management about Richardson's behavior, but that Constellation failed to take any action to prevent Richardson from harassing her.  Sloth claims that in 1994 or 1995, after a company picnic, Richardson and several other company employees went to her house, where plaintiff fell asleep.  Although plaintiff in her Complaint alleges that she fell asleep, in her EEOC Complaint she claimed that she had passed out from drinking.  She claims that

upon awaking, she found Richardson standing over her, and that her blouse had been undone and her shorts unzipped.  Plaintiff claims that she complained of this conduct to Constellation, but that Constellation took no action because the alleged incident took place at Sloth's home.  Plaintiff complained to the police regarding Richardson's conduct, but according to the defendant, no charges were ever brought.  She alleges that Richardson continued to harass her after the incident. Although plaintiff made numerous allegations about Richardson to Constellation management, none of her allegations could be substantiated, and in 1995, Sloth signed a letter prepared by Constellation acknowledging that the complaints she had made against Richardson were fabricated.

Sloth alleges that beginning in 1998, defendant John Bognaski, ("Bognaski") the director of East Coast Bottling Operations for Constellation, began "a long running and continuous pattern of quid pro quo sexual harassment and retaliation against [her]." She claims that Bognaski attempted to kiss her, and warned her that he would have her fired if she told anyone about the incident. Thereafter, Bognaski allegedly assigned her to work with Richardson, despite her request not to work with him because of his alleged harassment and sexual assault. According to Bognaski, he played no role in making work assignments.  After she refused a work assignment in which she was required to work with Richardson, she was disciplined.  When Bognaski called her to his office asking

her to explain her refusal to work with Richardson, he allegedly forced her to accompany him to a storage room where he forced her to perform oral sex on him.  Several of plaintiff's coworkers, including coworkers with whom plaintiff allegedly shared intimate details of her life, testified, or provided written statements indicating that plaintiff never complained of this alleged occurrence at the time it allegedly happened.  Several of plaintiff's co-employees also testified at plaintiff's workers' compensation hearing that it would have been impossible for Sloth to leave her work station on the production line without the entire line coming to a halt, and therefore, they did not believe that Sloth could have left her workstation and been forced to have sex in a storage room during working hours.  Still other coworkers, including Bognaski himself, testified that because his office was in a main hallway, had several windows, and was a conduit to other rooms used by employees, there was significant, often unannounced traffic in and near his office that would likely have prevented any type of improper physical assault of the plaintiff.

In 2003, plaintiff finalized her divorce from her husband, and she alleges that Bognaski thereafter increased his interest in attempting to have sex with her, and began sexually harassing her more frequently.  In 2006, Bognaski allegedly left a message on plaintiff's cell phone inviting her to join him after an evening of going out with her friends.  Sloth claims that Bognaski was upset

because Sloth's boyfriend and co-workers heard the message, and as a result, he allegedly gave her, or caused her to receive, a poor annual work-review resulting in a smaller pay raise than other employees received. Defendants claim that one of plaintiff's coworkers, Mary Henninger, who heard the voice message, described it as "very short and completely innocuous," and that Bognaski did not conduct the annual performance review.

Plaintiff alleges that during a wedding reception in April 2007, she became intoxicated after drinking "several alcoholic beverages." She claims that she woke up naked on a bed at an unknown location, with Bognaski standing over her claiming that he, "took advantage of [her]." Sloth claims that Bognaski threatened her that he would fire her if she told anyone what had happened. According to the defendants, Sloth testified at her Workers' Compensation Hearing that she had been "drinking all day", and that she did not know if she woke up in a truck or a room, and did not know whether Bognaski had "taken advantage of her" because she "was drunk."

In April 2008, plaintiff claims that she took a four week vacation. She alleges that Bognaski asked her to call him while she was on vacation so he could meet her. Sloth refused to, and upon returning to work, Bognaski claimed that she "owed him" for failing to call him.

Thereafter, plaintiff alleges that Bognaski repeatedly attempted to get Sloth into his office alone. She claims that Bognaski told the Chief Executive Officer of the company that he was "fucking" her, and that in August, 2008, Bognaski told her that he "want[ed] to put [his] cock in [her] mouth." She claims that someone had carved the words "good morning nipples" into her work station, but that Bognaski refused to take any action after she reported it. Defendants claim that although plaintiff alleged in her EEOC charge that she showed the carving to employee Deborah Bilodeau, Bilodeau gave sworn testimony stating that she had never seen such a carving, and had never heard of such an allegation until plaintiff's Workers' Compensation hearing in 2009.

In August, 2008, plaintiff alleges that Bognaski retaliated against her for failing to engage in sexual activity with him by scheduling her to work with Richardson. Plaintiff's requests to be reassigned were refused, and plaintiff was sent home to consider whether or not she would accept her work assignment or face termination of her employment. Plaintiff returned to work, but continued to complain about being assigned to work with Richardson, and met with defendant Bagshaw to complain about Bognaski's alleged sexual assaults and harassment. Thereafter, a few days later, plaintiff alleges that she suffered severe chest pain and shortness of breath as a result of having told Bagshaw about Bognaski's behavior. At some unspecified date thereafter, plaintiff alleges

that she took medical leave from her employment to be treated for post-traumatic stress disorder and agoraphobia resulting from the hostile work environment to which she was subjected.  She claims that approximately 6 months after disclosing Bognaski's alleged sexual assaults and behavior, and after filing a charge of discrimination with the EEOC on August 27, 2008, she was fired from her employment on or about February 28, 2009.  According to the defendants, Sloth's employment was terminated because her approved medical leave expired, and in the company's estimation, plaintiff was not able to return to work.

<u>PROCEDURAL BACKGROUND</u>

In August 2008, after leaving work with chest pains and while on medical leave, Sloth filed a claim for workers' compensation benefits claiming that she suffered work-related injuries of post traumatic stress disorder, panic disorder, and agoraphobia as a result of the sexual harassment she endured at Constellation.  A hearing was held at which 13 witnesses testified regarding whether or not Sloth suffered her alleged injuries as a result of events that occurred at her workplace.  By Decision dated November 30, 2009, Workers' Compensation Board Judge Ronald McEvoy found that Sloth was disqualified from obtaining workers' compensation benefits because she "knowingly made false statements and representations on [her claim form] and to the doctor's who examined her and during the course of her testimony under oath as

10

to the material facts for the purpose of obtaining compensation."
See November 3, 2009 Reserved Decision of Workers Compensation Law
Judge Ronald J. McEvoy at p. 2.   As a result, Judge McEvoy denied
plaintiff's compensation claim.

Plaintiff appealed Judge McEvoy's determination to the
Administrative Review Division of the Workers' Compensation Board
(the "Appeals Board").   In a Decision dated June 30, 2010, the
Appeals Board declined to decide whether or not Sloth was
disqualified from receiving benefits for having made false
statements to the Workers' Compensation Board, and instead held
that the plaintiff had failed to present any credible evidence that
she suffered a compensable injury while employed at Constellation.
See June 30, 2010 Memorandum of Board Panel Decision at p. 6.   In
so holding, the Appeals Board noted the plaintiff presented no
evidence that she had ever been treated for any anxiety,
depression, or stress disorder prior to September, 2008; that not
a single witness (other than the plaintiff) who testified at
plaintiff's hearing or submitted a sworn statement, supported
plaintiff's allegations of harassment; and that there was no
credible evidence that Richardson had harassed Sloth.   Id.

In addition to filing a claim for workers' compensation
benefits, plaintiff also filed, in August, 2008, a claim of
employment discrimination with the Equal Employment Opportunity
Commission.   On March 3, 2009, less than one-week after she was
terminated from her employment, plaintiff filed an amended charge

of discrimination with the EEOC.   Neither of plaintiff's administrative complaints were cross filed with the New York State Department of Human Rights.   On October 28, 2010, the EEOC issued a right-to-sue-letter to the plaintiff.   Thereafter, on January 24, 2011, plaintiff filed the instant case alleging gender, racial, national origin, and age discrimination.

DISCUSSION

Defendants seek reconsideration of this Court's finding that the plaintiff may proceed with her remaining causes of action under Title VII and the New York State Human Rights Law.   Specifically, Defendants contend that this court is required to adopt the findings of the Workers' Compensation Board, or in the alternative, give substantial weight to the factual findings of the Board. Defendants argue that if the Board's findings are given appropriate weight, then the Court must find as a matter of law that the plaintiff did not suffer any sexual harassment or discrimination, nor that was she retaliated against.   Defendants further contend that the court failed to appropriately calculate the tolling period for plaintiff's state law claims, and failed to address defendants' request that plaintiff's retaliation claims be dismissed.   I discuss these arguments seriatim.

I.   The Findings of the New York State Workers' Compensation Board do not preclude plaintiff's Title VII or New York State Human Rights Law Claims.

In my June 8, 2012 Decision and Order, I dismissed several of the plaintiff's claims, but permitted her to proceed on her Title

VII and state law claims of sexual harassment and quid pro quo employment discrimination against defendant Constellation Brands, and her state law claims of sexual harassment and quid pro quo employment discrimination against defendant Bognaski.  In declining to dismiss these claims, or in the alternative grant summary judgment in favor of the defendants with respect to these claims, I held that the doctrines of res judicata and collateral estoppel did not prevent plaintiff from asserting her claims in this action despite the findings of the New York State Worker's Compensation Board that plaintiff had not suffered any compensable work-place injury as a result of the alleged harassment and discrimination. On reconsideration, and for the reasons stated below and in my June 8, 2012 Decision and Order, I find no reason to modify this holding.

> A.   Plaintiff's Title VII claims may not be precluded by prior State administrative proceedings.

There is no question that the Workers' Compensation Board determination has no preclusive effect on her claims.  United States v. Elliot, 478 U.S. 788, 798-99 (1986)("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." )  See also Kremer v. Chemical Constr. Corp., 456 U.S. 461 (1982)(holding that unreviewed administrative determinations by state agencies do not preclude de novo consideration of subsequent Title VII actions" Id. at

470 n. 7).  Accordingly, I find that the findings of the WCB have no preclusive effect with respect to plaintiff's Title VII claims.

B.   The Doctrines of Res Judicata and Collateral Estoppel do not preclude plaintiff's State Law Claims.

1.   Res Judicata.

With respect to plaintiff's state law claims, the defendants reiterate the position made in their previous motion that the unreviewed decision of the Workers' Compensation Board is entitled preclusive effect before this court because it would have been given such effect in the Courts of New York State.  In support of this position, the defendants cite Elliot, in which the Supreme Court stated that "federal courts must give [a state] agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  Elliot, 478 U.S. at 798-99. However, as I stated in my June 8, 2012 Decision and Order, res judicata does not apply here because the Workers' Compensation Board did not issue any final judgment on the issue of plaintiff's Title VII or New York State Human Rights Law Claims, nor did the Board have authority to grant relief on those claims.  See June 8, 2012 Decision and Order at p.  30.

2.   Collateral Estoppel.

"Under New York law, collateral estoppel gives conclusive effect to an administrative agency's determination where: (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency; and (2) there was

a full and fair opportunity to contest the issue. Rahman v. Museum of Natural History, City-of New York, 2012 WL 1077679 at *8 (E.D.N.Y., March 30, 2012)( Jeffreys v. Griffin, 1 N.Y.3d 34, 769 N.Y.S.2d 184, 801 N.E.2d 404, 407 (N.Y.2003) . As I stated in my June 8, 2012 Decision and Order, the material issue necessarily decided by the Workers' Compensation Board was whether or not the plaintiff suffered a mental injury compensable under the Workers' Compensation Law. Specifically, the Board explicitly identified the issue before it as "[w]hether the claimant has presented sufficient credible evidence to support a psychological stress injury due to sexual harassment in the work place." See June 30, 2010 Memorandum of Board Panel Decision at p. 1. To determine whether or not the plaintiff suffered a psychological injury, the Board had to decide, as a matter of fact, whether "the stress experienced by the claimant was greater than that which other similarly situated workers experienced in the normal work environment." Id. at p. 4. Accordingly, although the Board considered evidence of sexual harassment, and found the evidence of sexual harassment to be lacking, the issue necessarily decided by the Board was not whether sexual harassment occurred, but whether a mental stress injury occurred. It is this finding of the Board, that no mental stress injury occurred, that is entitled to preclusive effect with respect to plaintiff's current Human Rights Law Claims. Because the issue of whether or not plaintiff suffered

sexual harassment during the relevant periods for which she can make a claim of discrimination claim under New York law was not completely and necessarily decided by the Workers' Compensation Board, the findings of the WCB are not entitled to preclusive effect on that issue.  See e.g. Ragusa v United Parcel Service, 2008 WL 612729 at *6 (S.D.N.Y., March 3, 2008)(declining to give preclude plaintiff's New York State discrimination claims based on prior Workers' Compensation Board findings where plaintiff did not have full and fair opportunity to litigate claims before the WCB.)

With respect to any specific findings made by the Board on the issue of sexual harassment allegations raised in that case, those findings do not preclude plaintiff's claims here.  For example, although the Board determined that Sheldon Richardson had not harassed the plaintiff (June 30, 2010 Memorandum of Board Panel Decision at p. 5-6), the claims against Richardson in this action were dismissed as untimely in my June 8, 2012 Decision and Order. And while the Board also noted that there was no medical evidence that plaintiff had sought treatment for alleged mental injuries related to harassment, and that police declined to investigate her complaint of sexual assault, (June 30, 2010 Memorandum of Board Panel Decision  at p.  5) such remarks are not findings of the Board.  Finally, while the Board characterized plaintiff's discrimination claims as an "afterthought" made in response to work-place decisions that negatively affected her, the Board

limited its findings to a determination that no workplace injury had occurred.  (June 30, 2010 Memorandum of Board Panel Decision at p. 6).

My holding that the workers' compensation issues decided by the Board are distinct from the discrimination issues raised here is supported by the position taken by the defendants during the workers' compensation proceedings.  In the workers' compensation proceedings before Judge McEvoy, counsel for the defendants explained to Judge McEvoy that there were two separate proceedings between the parties: the workers' compensation proceeding, and the employment discrimination proceeding before the Equal Employment Opportunity Commission ("EEOC").  See Deposition Transcript of Cynthia Helker before the Workers' Compensation Board at p. 170. When Judge McEvoy suggested that the two cases were essentially the same, counsel for Constellation responded "[w]ell, no, they're different statutes, they are different standards of proof, <u>a different legal issue entirely</u>." <u>Id</u>. at 171. (emphasis added). I agree with counsel's position before the Workers' Compensation Board that the compensation issue before the Board was, and is an entirely different legal issue than the discrimination issue before the EEOC and this court.  Accordingly, I decline to apply collateral estoppel to the Board's finding that there was "insufficient evidence in the record to support the establishment of a [Compensation] claim" based on alleged sexual harassment. June 30, 2010 Memorandum of Board Panel Decision  at p.  6.

Defendants next argue that this court failed to adhere to the "binding" precedent of <u>Paone v. Wynantskill Detention Center</u>, a decision issued by the New York State Supreme Court, Rensselaer County, which held that findings of a Workers' Compensation Board could preclude a plaintiff from proceeding with an employment discrimination claim under the New York Human Rights Law and Title VII.[3] According to the defendant, because the Court in <u>Paone</u> held that a Workers' Compensation Board determination precluded a plaintiff from proceeding with subsequent State and federal employment discrimination claims, this court must make the same finding.

It is well settled, however, that the determination of whether or not collateral estoppel should apply in a case is a fact-

---

[3]Although defendants characterize the precedent set forth in <u>Paone</u> as "binding" on this court, (<u>see</u> Defendants' Memorandum of Law in Support of Motion for Reconsideration at p. 24) the unreported decision of a New York State Supreme Court sitting in Rensselaer County is not binding on a federal district court, even on a matter of State law. <u>King v. Order of United Commercial Travelers of America</u>, 333 U.S. 153, 160-161 (1948)(decision of lower court not controlling where the highest court of the State has not rendered an opinion on the issue).  Moreover, with respect to the holding that a Workers' Compensation Board's determination could preclude a plaintiff from proceeding with a Title VII claim (a position not advanced by the defendants here) the Court in <u>Paone</u> failed to acknowledge or consider the explicit, and binding, statutory language of Title VII which prohibits State administrative determinations from having a preclusive effect on subsequent Title VII actions, and the binding precedent of <u>Elliot</u> and <u>Kremer</u>, discussed above at Section II(A) which acknowledge that State administrative proceedings have no preclusive effect on later-filed Title VII actions.

intensive inquiry that is to be made on a case-by-case basis. "[C]ollateral estoppel is a flexible, equitable doctrine that requires a case-by-case analysis of the facts and realities of a particular litigation, and should not be rigidly or mechanically applied." White v. Frize, 827 N.Y.S.2d 302, 304 (3rd Dept., 2006); Sinisgallo v. Town of Islip Housing Authority, 865 F.Supp.2d 307, 335 (E.D.N.Y., 2012). Moreover, under New York Law, even in cases where all of the elements of collateral estoppel have been satisfied, "it lies within the discretion of the trial court whether to apply the doctrine of collateral estoppel, and the doctrine need not be applied even if all of the prerequisites to the doctrine have been met". Calhoun ex rel. Children's Rights Initiative, Inc. v. Ilion Cent. School Dist., 936 N.Y.S.2d 438, 441 (4th Dept., 2011); Sinisgallo, 865 F.Supp.2d at 335. Accordingly, in the exercise of discretion afforded courts under New York Law, and for the reasons stated in my June 8, 2012 Decision and Order, I decline to preclude plaintiff from proceeding with her Human Rights Law claims.

  C. The Court is not required to afford "great" or "Substantial" weight to the findings of the Workers' Compensation Board.

Defendants argue that even if the court does not afford preclusive effect to the determination of the Workers' Compensation Board, the Court is required to give substantial weight to the findings of the WCB with respect to plaintiff's Title VII and State

law claims.  Defendants assert that if the findings of the WCB are given appropriate weight, the Court must find as a matter of law that the defendants did not discriminate against the plaintiff, and therefore summary judgment in favor of the defendants is appropriate.   In support of their argument, defendants cite, Greenberg v.  New York City Transit Authority, 336 F.Supp.2d 225, 243 (E.D.N.Y., 1994); Harper v.  National Kidney Foundation, Inc., 2005 WL 43774 (W.D.N.Y., Jan 10, 2005)(Larimer, J.); Ragusa v. United Parcel Service, 2008 WL 612729 (S.D.N.Y., March 3, 2008); Alexander v.  Gardner-Denver Co., 415 U.S. 36 (1974); and Oparaji v. United Federation of Teachers, 418 F.Supp.2d 139 (E.D.N.Y., 2006) for the proposition that a district court must give "substantial" or "great" weight to the factual findings of an administrative tribunal.

I find however, that the above-cited cases are readily distinguishable for the case presented here, and that under the facts of this case, this  court is under no obligation to afford great or substantial weight to the factual findings of the WCB. Instead, I find that this court is required to exercise discretion in determining whether or not the factual findings of the WCB are to be afforded substantial weight.   In the exercise of that discretion, and for the reasons set forth below, I hold that the findings of the WCB are not entitled to substantial weight.

In <u>Greenberg</u>, the district court held that where an administrative proceeding had been "<u>commenced under State or local [employment discrimination] law</u>," the court could, though it was not required to, "give 'substantial weight' to final findings and orders made by State or local authorities. <u>Greenberg</u>, 336 F.Supp.2d at 225 (emphasis added). In the instant case, however, plaintiff's State proceedings were <u>not</u> commenced under State employment discrimination law, but instead were initiated under State Workers' Compensation law. Accordingly because the State proceedings in this case were not commenced under State employment discrimination law, the court is not required to give the State findings substantial weight.[4] For this reason, the holding in <u>Harper</u>, in which Judge Larimer of this court held that findings of the New York State Board of Human Rights in a state discrimination proceeding were entitled to substantial weight in a federal

---

[4] While the decision in <u>Ragusa</u> cited by the defendants does state that "[c]ourts do give 'substantial weight' or 'great weight' to the factual findings of prior administrative proceedings" <u>Ragusa</u>, 2008 WL 612729 at *5, the <u>Ragusa</u> court relied, in part, on <u>Greenberg</u>, and the case of <u>Collins v. New York City Transit Authority</u>, a case which was recently distinguished by the court in <u>Murphy v. Suffolk County Community College</u>, 2012 WL 4979429 (E.D.N.Y. October 16, 2012)(discussed below) as applying only to administrative determinations made by tribunals that were actually determining whether or not an employee could retain his or her employment, such as a Union arbitration board. Moreover, although the court in <u>Ragusa</u> acknowledged that a court may give substantial weight to a prior administrative proceeding, the Court declined to do so on grounds that the plaintiff had presented strong evidence that the prior findings were wrong as a matter of fact. <u>Ragusa</u>, 2008 WL 612729 at *6.

discrimination proceeding are not applicable here.  In <u>Harper</u>, the administrative proceedings were commenced under State employment discrimination law: in this case, they were not.

The position that administrative findings made in proceedings not commenced pursuant to state or local discrimination law has its genesis in <u>Alexander</u>, where the Supreme Court noted that in cases "[w]here an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight."  <u>Alexander</u>, 415 U.S. at fn. 21.  In this case, however, the Workers' Compensation Board gave no weight to the plaintiff's Title VII rights, and therefore, the findings of the WCB are not entitled to great weight.  This result comports with the Court's pronouncements in <u>Elliot</u>, in which the Court noted that Congress, in enacting Title VII, specifically mandated that the EEOC, "'give substantial weight to final findings and orders made by State or local authorities <u>in proceedings commenced under State or Local</u> <u>[employment discrimination] law</u>'" but imposed no such requirement on federal courts.  <u>Elliot</u>, 478 U.S. at 795-796 (emphasis added) (quoting <u>Chandler v. Roudebush</u>, 425 U.S. 840, 848 (1976)).

<u>Oparaji v. United Federation of Teachers</u>, cited by the defendants, is also distinguishable from the case at bar.  In <u>Oparaji</u>, the <u>pro</u> <u>se</u> plaintiff claimed that he had not been fairly represented by his union, and that the reason for the unfair representation was that he was discriminated against.  Prior to

bringing his federal discrimination claim, however, plaintiff had made a formal complaint to the New York State Public Employment Relations Board that the union had not fairly represented him. The Board, which was authorized by State law to consider and adjudicate such claims, specifically investigated that issue, and explicitly found that plaintiff had been fairly represented by his union. Under those circumstances, the federal district court gave substantial weight to the findings of the Public Employment Relations Board.

In this case, however, the Workers' Compensation Board was not authorized or empowered under any law to resolve plaintiff's employment discrimination claims. Moreover, the issue before the Board was whether the plaintiff had suffered an injury at work, not whether she had been subject to discrimination as defined under Title VII or the New York State Human Rights law. Thus, unlike Oparaji, where the plaintiff's specific claim of unfair representation had been decided by an administrative agency authorized by law to adjudicate such an issue, the plaintiff here claimed that she suffered a work-related injury, and the Workers' Compensation Board decided that issue. Its findings with respect to discrimination, which were not made in accordance with any state or federal standard related to adjudicating discrimination claims, are not entitled to substantial weight.

Finally, in a case recently decided by the district court for the Eastern District of New York, the court declined to give "substantial weight" to a determination of the New York State Department of Human Rights that the plaintiff had not been subjected to unlawful age discrimination or retaliation under federal law. Murphy v. Suffolk County Community College, 2012 WL 4979429 (E.D.N.Y. October 16, 2012). In Murphy, the court held that substantial weight would only be given to determinations where the administrative body at issue was adjudicating the actual termination of the employee's employment. Accordingly, in Murphy, because the "plaintiff's termination did not depend on, nor was it allowed by, the [New York State Department of Human Rights'] determination" the administrative findings were not entitled to "substantial weight." Murphy, 2012 WL 4979429 at *1.

For the reasons set forth above, I find that this court is not required to give substantial weight to the findings of the Workers' Compensation Board. Because the findings do not carry substantial weight, the findings do not preclude plaintiff from proceeding with her remaining Title VII and New York State Human Rights Law claims.[5]

---

[5] Although the findings of the Workers' Compensation Board do not preclude the plaintiff from proceeding with her claims, the evidence adduced before that tribunal, and introduced here in the defendants' Motions to Dismiss and for Reconsideration, is now a part of the record in this action and will certainly inform the parties, particularly with respect to their obligations under Rule 11 of the Federal Rules of Civil Procedure, with respect to

II.  Plaintiff's  State  Law  claims  are  tolled  during  the
pendency of her EEOC proceedings.

Defendants argue that this court improperly calculated the
tolling period for plaintiff's state law claims.  According to the
defendants, State Human Rights Law claims may not be tolled while
a plaintiff proceeds with a federal administrative complaint of
discrimination.  In support of this contention, the defendants
argue that the New York State Human Rights law does not authorize
tolling of claims while an administrative complaint is pending
before the EEOC, and that the cases relied on by this court in
finding that State law claims are tolled were "wrongly decided and

_____

any factual averments made before this court.  Specifically, Rule
11(b)(3) provides that any factual contentions made in any
submission to the court must have "evidentiary support or, if
specifically so identified, will likely have evidentiary support
after a reasonable opportunity for further investigation or
discovery."  Judge McEvoy found that the testimony of the
plaintiff before the Workers' Compensation Board was "evasive []
conflicting [] confusing and not credible.  See November 3, 2009
Reserved Decision of Workers Compensation Law Judge Ronald J.
McEvoy at p.  2.  Judge McEvoy further held that the plaintiff
made "false statements and representations . . .to the doctors
who examined her and during the course of her testimony under
oath as to material facts . . . ."  Id.  A review of the
testimony and statements provided to the Workers' Compensation
Board reveals that plaintiff's claims of harassment were wholly
uncorroborated and unsubstantiated by other witnesses.  Should it
be determined that the plaintiff's claims made in this case lack
evidentiary support, plaintiff and her counsel could be subject
to fines, and costs, and counsel could be subject to disciplinary
actions, including suspension from practice before this court.
While this Decision and Order affirms that under Title VII, a
plaintiff is generally and liberally entitled to a de novo
consideration of her discrimination claims, nothing in this
Decision and Order should be construed as countenancing claims
that lack evidentiary support.

poorly reasoned." <u>See</u> Defendants' Memorandum of Law in Support of their Motion for Reconsideration at p.  16.  Defendants further argue that the tolling argument is waived because the plaintiff failed to raise it.

I decline to revisit my determination that State Human Rights Law claims are tolled during the pendency of EEOC proceedings.  As I stated in my June 8, 2012 Decision and Order, numerous courts in New York have held that Human Rights Law claims are tolled while plaintiffs proceed with administrative claims before the EEOC. <u>DeNigris v. New York City Health and Hospitals Corp.</u>, 861 F.Supp.2d 185, 192 (S.D.N.Y., 2012)(three-year limitations period is tolled "for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter."(<u>citing</u> <u>Wilson v. New York City Police Dept.</u>, 2011 WL 1215735, *4 (S.D.N.Y. Mar.25, 2011)); <u>Esposito v. Deutsche Bank AG</u>, 2008 WL 5233590, *5 (S.D.N.Y., December 16, 2008) (stating that "[a]lthough the Second Circuit has yet to definitively opine on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under [the New York Human Rights Law] . . . numerous courts in this Circuit have held that the three-year statute of limitations applicable to claims under NYSHRL . . . 'is tolled during the period in which a complaint is filed ... with the EEOC.'")(<u>quoting</u> <u>Lee v. Overseas Shipping Corp.</u>,, 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001); <u>See</u> <u>also</u>,

Butler v. New York Health & Racquet Club, 768 F.Supp.2d 516, 536 (S.D.N.Y., 2011); Smith v. Tuckahoe Union Free School Dist., 2009 WL 3170302 at * 11 (S.D.N.Y., September 30, 2009); Siddiqi v. New York City Health & Hosp. Corp., 2008 WL 3833869, at *18 (S.D.N.Y. Aug. 12, 2008); Ritterband v. Hempstead Union Free School Dist., 2008 WL 3887605, at *9 n. 9 (E.D.N.Y. Aug. 20, 2008).

Additionally, following the issuance of my June 8, 2012 Decision and Order, two other courts have recognized that State law claims are tolled while charges are pending before the EEOC, even if, as in this case, the administrative charge was not actually dual-filed with the New York State Division of Human Rights. See Capobianco v. Sandow Media Corp., 2012 WL 4561761 at * 4 (S.D.N.Y., September 29, 2012(noting that "'[a] charge filed with the EEOC should be treated as constructively cross-filed with the [New York State Division of Human Rights] and the statute of limitations for state claims should be tolled during the pendency of a claim filed with the EEOC'")(quoting Constance v. Pepsi Bottling Co. of N.Y., 2007 WL 2460688, at *12 (E.D.N.Y., Aug.24, 2007)); Manello v. Nationwide Mut. Ins. Co., 2012 WL 3861236 at * 11 (E.D.N.Y., September 04, 2012(holding that "the statute of limitations for claims under the NYSHRL is subject to tolling pursuant to Section 204(a) of the New York Civil Practice Law and Rules which provides that '[w]here the commencement of an action has been stayed by * * * statutory prohibition, the duration of the stay is not a part of

the time within which the action must be commenced.'")(quoting DeNigris, 861 F.Supp.2d at 192).

Moreover, the New York State Court of Appeals has held that Human Rights Law Claims are tolled during the pendency of a complaint filed with the State Division of Human Rights (see Penman v. Pan Am. World Airways, 69 N.Y.2d 989 (1987)) and the New York State Appellate Division, 4th Department, has confirmed that the tolling of Human Rights Law Claims is extended to administrative complaints filed with the EEOC.  Martinez-Tolentino v. Buffalo State College, 715 N.Y.S.2d 554, 555 (4th Dept., 2000)(Human Rights law "limitations' period was tolled beginning [on] the date on which plaintiff filed his complaint with the Equal Employment Opportunity Commission.") I find none of these cases to be poorly reasoned or wrongly decided, and accordingly, I find that the plaintiff's Human Rights Law claims were tolled from the time she filed her administrative complaint with the EEOC and the issuance of the right to sue letter by the EEOC.

With respect to defendants' claim that the plaintiff waived any argument related to the appropriate tolling of her State law claims because she failed to argue that her claims were tolled, the court is not required to ignore the applicable law with respect to tolling simply because the plaintiff failed to raise the issue.

III. <u>Plaintiff has stated a prima facie case of retaliation</u>

The defendants contend that this court failed to address their arguments that plaintiff's retaliation claims should be dismissed, or, in the alternative, that summary judgment should be granted in favor of the defendants with respect to plaintiff's retaliation claims. Because this Court did not previously rule on plaintiff's Title VII retaliation claims, I do so here, and find that plaintiff has stated a cause of action for retaliation sufficient to withstand a motion to dismiss. I further find that summary judgment in favor of the defendants dismissing the retaliation claim is inappropriate at this time, prior to the commencement of discovery.

Plaintiff alleges that the termination of her employment was in retaliation for making complaints of gender discrimination, and for filing a complaint of discrimination with the EEOC. <u>See</u> Plaintiff's Complaint at ¶ 156. She claims that in August 2008, she complained of sexual harassment to the defendants, and that during the same month, she filed a discrimination complaint with the EEOC. She further claims that while she was out on medical leave, the defendants fired her in February 2009. The defendants claim that plaintiff was fired only after her approved medical leave-of-absence expired, and defendants considered her to be unable to return to work.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant;

(2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action. Burlington Northern & Santa Fe Railway Co. V. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2nd Cir. 1995) (citations omitted).

In the instant case, Sloth claims that she engaged in protected activity by filing a complaint of discrimination with the EEOC and complaining of discrimination to her employer. She claims that she was retaliated against by the defendants by having her employment terminated after her medical leave expired. Such a claim states a prima facie case of retaliation.

Defendants contend that plaintiff has failed to state a claim for retaliation because she cannot show a causal connection between her engaging in protected acts and defendants' decision to terminate her employment. Defendants further contend that the plaintiff has failed to controvert the legitimate, non-discriminatory reason proffered for terminating her employment. At this stage of the litigation, however, the facts relied on by the defendants in support of its position are controverted, and therefore, it would be inappropriate to grant summary judgment where there are genuine issues of material fact in dispute. See

30

Fed. R. Civ. P. 56(c) (summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."). While the defendants invite the court to rely on the evidence presented to the Workers' Compensation Board to find that the defendants' had a legitimate, non-discriminatory reason for terminating plaintiff's employment, there is no legal basis for exhuming that evidence and relying on it in this proceeding, particularly where the WCB made no findings as to why the plaintiff was fired, or whether the firing was in retaliation for engaging in protected activity under Title VII. Rather, at this stage of the proceeding, plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." See <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Plaintiff has made such a showing.

<u>CONCLUSION</u>

For the reasons set forth above, I deny defendants' motion for reconsideration. Defendants' Motion for summary Judgment remains denied without prejudice to renew should evidence produced or obtained in discovery warrant the filing of a renewed motion for summary judgment.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
    Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          February 19, 2013